JOHN WAGGEMAN

*v.*

THE VILLAGE OF NORTH PEORIA.

*Filed at Ottawa April 1, 1895.*

1. EMINENT DOMAIN—*condemnation for street—what is a taking or damaging for public use.* It is not a taking or damaging for public use without just compensation, to pay a portion of the value of land condemned for a street by setting off against it special benefits received by the property from which the land is taken and for which it is specially assessed. *Bloomington* v. *Latham,* 142 Ill. 462, distinguished.

2. PUBLIC IMPROVEMENTS—*presumption that benefits are not assessed on part of lot taken.* An assessment for a street improvement by number of a lot of which a portion has previously been taken for a street, will not be held an assessment of the owner for the street as well as for the remaining portion of the lot, as the lot is still to be described by such number, and it is to be presumed that the estimate of benefits excluded the land which has ceased to be a part of the lot. *DeKoven* v. *Lake View,* 129 Ill. 399, followed.

3. EVIDENCE—*proper to show street, when opened, will connect with other streets.* Upon the trial of the question of benefits from the opening of a street, evidence that another strip of land has been recognized and used as a public street, and, with that condemned, will continue other existing streets from a village to a city, is admissible, as the opening of such continued street will confer a larger benefit than if the street opened were not a thoroughfare.

155—35

4. DEDICATION—*proof of intention to dedicate must be clear.* To justify a claim that land has been dedicated by the owner for public use the proof should be very satisfactory, either of an actual intention to dedicate, or of such acts and declarations as should equitably estop the owner from denying such intention.

5. SAME—*fencing out a strip is not alone a dedication.* Fencing out a strip of land corresponding in width and forming a continuation of an existing street, planting a line of shade trees in line with those on such street, and a covenant 'in the sale of land adjoining such strip to open it as a continuation of such street, upon request, and referring to it as such street "projected," do not constitute a dedication of the land, where both the declarations and acts of the owner show he did not intend to dedicate, but left the strip in the expectation it would be condemned for a street by the village.

6. HIGHWAYS—*assessment made on erroneous assumption will be set aside.* An assessment for the opening of a street will be set aside, on appeal, where it was made upon the erroneous assumption that other land was a public street, which, in connection with that opened, would form a continuous thoroughfare.

APPEAL from the County Court of Peoria county; the Hon. SAMUEL D. WEAD, Judge, presiding.

JAMES A. CAMERON, and LOUIS F. MEEK, for appellant.

ARTHUR KEITHLEY, for appellee.

Mr. JUSTICE BAKER delivered the opinion of the court:

On the 20th day of February, 1893, the village of North Peoria passed an ordinance for opening and extending Linn street, in said village, for a distance of 147 feet south from where it was already opened, at the north line of lot 20, in Armstrong's subdivision, and also for widening Richmond avenue 25 feet at the north end of the east 70 feet of said lot 20. The lot was and is owned by John Waggeman, the appellant, and in order to make the contemplated improvement it was necessary to condemn for public use two strips of ground in said lot, one of them 147 feet long by 66 feet wide, and the other 70 feet long by 25 feet wide. The ordinance, therefore, made provision for such condemnation, and for paying the cost and expense of opening and extending the street

and widening the avenue by a special assessment upon the property benefited by the improvement. The compensation awarded appellant in the condemnation proceeding for the land taken was $1800. Thereupon a supplemental petition was filed, and the commissioners then appointed to assess benefits afterwards reported to the court that there would be no benefit to the public by reason of the improvement, and that the whole cost of the improvement, estimated at $2056.50, should be paid by the property benefited thereby, and they assessed $950 of the $2056.50 upon the property of appellant—*i. e.*, $500 on that part of lot 20 lying west of Linn street, $200 on that part of lot 20 lying east of Linn street, and $250 on that part of lot 27 lying west of Linn street. Lot 27 lies immediately south of lot 20. Appellant filed a number of objections to the assessment roll returned into the county court by the commissioners. Those that it devolved upon the court to decide were overruled. Those that questioned the amount of benefits assessed were submitted to a jury. The verdict of the jury was in harmony with the report of the commissioners, except that it reduced the assessment on that part of lot 20 lying west of Linn street from $500 to $452, thereby making the total assessment on appellant's property $902 instead of $950, and thereupon the court, after overruling a motion for a new trial, ordered that the assessment roll be made to conform to the verdict of the jury, and that having been done, entered judgment of confirmation.

It is claimed that to estimate the value of the property of appellant taken for the public street at $1800, and then compel him to contribute $902 of that amount, is in derogation of section 13 of article 2 of the constitution, which provides that private property shall not be taken or damaged for public uses without just compensation. Appellant seems to base this claim upon the decision of this court in *City of Bloomington* v. *Latham*,

142 Ill. 462. The scope of that decision is evidently misapprehended. That was a case of special taxation, and not a case of the assessment of special benefits. It was there held that an ordinance directing that the cost of the land taken or damaged, or both, shall be assessed upon and collected from the lands abutting upon the proposed alley or street, in proportion to the frontage thereof, in effect provides for the taking or damaging of the lands without just compensation, and is therefore unreasonable, unconstitutional and void ; and such case is there distinguished from a special assessment proceeding, and it is there recognized that in such latter proceeding complete compensation is secured, although the condemnation judgment is paid, either in whole or in part, by setting off against it the special benefits received by the property from the improvement. It has been the uniform practice in this State to sustain special assessments under such circumstances. The claim made by appellant in this regard cannot be admitted.

It is urged that there is assessed to appellant that part of lot 20 that lies west of Linn street, and that by reference to the plat and testimony it will be seen that that includes a portion of Richmond avenue, 25 feet by 190 feet in size, off of the north side of the part of lot 20 that lies west of Linn street. Notwithstanding the fact that the strip 25 feet wide had before that time been taken for the street, yet the lot still remained lot 20 in Armstrong's subdivision, and it is to be presumed, in the absence of evidence to the contrary, that both the commissioners and the jury, in estimating benefits to the lot, excluded the land that had ceased to be a part of the lot and had been incorporated as a part of the public street. The case of *DeKoven* v. *City of Lake View*, 129 Ill. 399, is directly in point, and is fatal to the contention of appellant.

The strip of land condemned for the opening and extension of Linn street is 147 feet long, from north to

south, and 66 feet wide.  Immediately north of it Linn
street extends north into the village, as far as to Ne-
braska street.  The territorial limits of the village ad-
join and are immediately north of those of the city of
Peoria.  The south line of the strip condemned is directly
north of and 294 feet distant from the north end of Linn
street in the city of Peoria, at the city limits, and said
street extends south from said limits into the city, a dis-
tance of two blocks.  At the trial, before the jury, appel-
lee was permitted, over the objections of appellant, to
introduce testimony tending to prove that the strip of
land 294 feet long, and located north of the north line of
the city limits and south of the strip condemned, was a
part of Linn street, and had been recognized and used as
such, and as a public street, for many years, and that with
the land condemned there would be a continuous public
street, reaching from Nebraska street, in the village, to
Chambers street, in the city.  We think this testimony
was both competent and material.  The jury were im-
paneled to try the question of benefits to the property
of appellant and other objectors.  If there was a public
street between the land condemned and the city limits,
thereby affording communication with Chambers street,
in the city of Peoria, the contemplated improvement
would confer a much larger measure of benefits upon the
property assessed than if there was no such street.  This
is very clearly shown by the evidence introduced by both
parties.  It is manifest that a mere pocket, 147 feet long,
reaching down into the land and premises of appellant,
would be of little or no benefit to him or his property.
The location and condition of the property, and all the
surrounding facts and circumstances, are necessarily com-
petent testimony in an inquiry such as this.  Without
such proof a jury would hardly be able to reach an in-
telligent and just conclusion.  There was no error in
admitting the testimony.  But if it were competent for

the village, as touching the question of benefits, to show that there was a street between the city limits and the land condemned, it was equally competent for appellant to show, for the purpose of reducing benefits, that there was no street there. And this leads us to what we regard as the weak point in the case of appellee.

One of the assignments of error is, that the court erred in rendering judgment on the verdict of the jury, and in not granting a new trial. Among the points, in writing, specifying the grounds of the motion for a new trial were these : that the verdict of the jury is contrary to the evidence, and that the verdict is contrary to law.

In order to justify a claim that land has been dedicated by the owner for the use of the public, the proof should be very satisfactory, either of an actual intention to dedicate, or of such acts and declarations as should equitably estop the owner from denying such intention. *Kelly* v. *City of Chicago,* 48 Ill. 388 ; *Godfrey* v. *City of Alton,* 12 id. 29 ; *Marcy* v. *Taylor,* 19 id. 634; *Gentleman* v. *Soule,* 32 id. 271; *Rees* v. *City of Chicago,* 38 id. 322; *Harding* v. *Town of Hale,* 61 id. 192 ; *Town of Princeton* v. *Templeton,* 71 id. 68 ; *McIntyre* v. *Storey,* 80 id. 127; *City of Bloomington* v. *Cemetery Ass.* 126 id. 221.

In 1863 appellant became the owner of lots 20, 21, 26, 27, 28 and 29, in Armstrong's subdivision. The lots are immediately north of the limits of the city of Peoria, and an extension of Linn street in that city beyond the boundary line of the city would cut off the east parts of lots 20 and 27, and leave small portions of those lots and lots 28 and 29 on the east side of the street and the larger parts of lots 20 and 27 on the west side of the street. In 1871 appellant sold and conveyed to McIlvaine and Negley lots 28 and 29 and parts of lots 20 and 27, said parts being on the east side of the lots and 294 feet from north to south, and "running back same width to the line of Linn street projected." He at the same time executed to said Mc-

Ilvaine and Negley a penal bond, in which he bound himself that he would, "on the application of said Mc-Ilvaine and Negley, open Linn street 66 feet wide along and adjoining the rear end of said lots above set forth, the whole length of the 294 feet." A fence was then erected along the west side of the land so sold, said fence running north from the city limits 294 feet, and starting from the point where the east line of Linn street intersects the city limits line. A few years thereafter appellant built a fence from the point where the west line of Linn street intersects the city boundary line, and ran said fence north, and across lots 20 and 27. In this way an opening was made across appellant's land of the same width as Linn street, and reaching from the city limits to an east and west lane that was north of lot 20, which lane has since been widened and is now Richmond avenue.

The principal facts in evidence tending to prove the existence of the public street and the claim of dedication, are the fencing out of the strip of land corresponding in width with Linn street, the acquiescence of appellant in its use by the public for travel, the planting by him of shade trees on the west side in line with the shade trees on Linn street, the covenant in the bond to McIlvaine and Negley, and the use therein of the expressions "Linn street" and "Linn street projected." On the other hand, appellant testifies positively that he never intended to dedicate the land for a street or for the use of the public; that he fenced it out for his own convenience, and with a view to the fact that a street would at some future time be needed there and the land condemned by proceedings extending Linn street. There are various facts and circumstances that tend to corroborate his testimony. The village has never done any work upon that part of the supposed street, except once, and at that time appellant was absent from the State. He has always

objected to the public authorities doing any work upon it, or in any way improving it or assuming control over it. He has several times built and maintained fences across it, and at one time he had a portion of the strip of 294 feet fenced in, and raised a crop on it. He from time to time told Odell, Bunn and others that there was no street there, and that he did not intend to give the street; and the language of his numerous tax receipts in evidence is such as seems to indicate that his lots have been so assessed and taxes paid thereon as to include the portions of the lots within the limits of the supposed street. It also appears that McIlvaine and Negley never made application to him to open Linn street to the west of the land sold to them.

So far as use by the public is concerned, it seems to have always been very limited, and, until within the last few years, quite as much over the strip 147 feet long that is sought to be condemned, as over the strip 294 feet long. Some years ago appellant constructed a fence across the north end of the first mentioned strip, at Richmond avenue, and still maintains it. Shortly after the commencement of the condemnation proceedings he also built a fence across that which is claimed to be a public street, at the south end of the strip of 294 feet. As we understand the record, appellant was, at the time of the trial, in the actual, adverse and exclusive possession of all of the land that is called "Linn street," and that lies north of the territorial limits of the city of Peoria and south of Richmond avenue, in the village of North Peoria.

The briefs for both parties to this case call attention to the case of *Waggeman* v. *Village of North Peoria,* 42 Ill. App. 132. It seems to have been a prosecution against the appellant in this case for obstructing Linn street in violation of an ordinance of appellee, and it also seems there to have been held that this strip of ground, reach-

ing north from the city limits of Peoria to Richmond avenue, is not a public street.

In our opinion the evidence in this record does not clearly and satisfactorily show a dedication to the public, for the purposes of a street, of the 294 feet of ground lying between the city limits of Peoria and the land that was condemned for a street, or establish as a fact that said ground was a public street. On the contrary, it seems to us that the weight of the evidence is otherwise. It is perfectly manifest that the jury, in making their findings in regard to the special benefits to appellant's property, proceeded upon the assumption that the ground in question was a public street. In no other way could they have rendered the verdict that they returned.

We think that it was error to overrule the motion for a new trial and enter judgment confirming the assessment, as modified by the verdict of the jury. For that error the judgment against the lands of appellant is reversed, and the cause is remanded.

*Reversed and remanded.*